J. Robert Andrews,
  Petitioner

vs                                    Case No. 1:08cv667
                                      (Barrett, J.; Hogan, M.J.)

Chief Probation Officer, Hamilton County
Court of Common Pleas,
  Respondent

## REPORT AND RECOMMENDATION

Petitioner, who apparently has been in state custody under the supervision of the Probation Department of the Hamilton County, Ohio, Court of Common Pleas, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition and respondent's return of writ, as supplemented by respondent in accordance with an order issued by this Court on November 5, 2009. (Docs. 1, 8, 12-15; *see also* Doc. 9).

### Background

On December 16, 2004, the Hamilton County, Ohio, grand jury returned a five-count indictment charging petitioner with two counts of pandering sexually oriented matter involving a minor in violation of Ohio Rev. Code § 2907.322(A) (Counts 1 and 2); one count of illegal use of a minor in nudity-oriented material or performance

in violation of Ohio Rev. Code § 2907.323(A)(3) (Count 3); one count of tampering with evidence in violation of Ohio Rev. Code § 2921.12(A)(1) (Count 4); and one count of attempted importuning, as defined in Ohio Rev. Code § 2907.07(E),[1] in violation of Ohio Rev. Code § 2923.02(A) (Count 5). (Doc. 12, Ex. 4).

Petitioner's trial counsel filed a motion to suppress evidence seized from petitioner's residence pursuant to two search warrants. (*Id.*, Exs. 5-7). Counsel also filed a motion to dismiss Count 5 of the indictment on the grounds that (1) attempted importuning is not a criminal act, and (2) such a charge "criminalizes speech that is presumptively protected by the First Amendment to the United States Constitution." (Doc. 13, Ex. 6). On June 20, 2005, the trial court overruled petitioner's motion to suppress after hearing testimony and arguments of the parties. (Doc. 13, Ex. 2; *see also* Doc. 12, Exs. 1-2). The court also denied petitioner's motion to dismiss Count 5 of the indictment. (*See* Doc. 15, Ex. 2, pp. 6-7).

Apparently, "[o]n December 29, 2005, petitioner served a subpoena duces tecum on the University of Cincinnati Office of the Registrar for the permanent academic record and all transcripts for former student, John Patrick Reubusch," who was listed as a potential State witness. (*See* Doc. 14, Ex. 2). The State filed a motion to quash the subpoena duces tecum, arguing that disclosure of the records would violate Reubusch's right to privacy and that the information contained in the records was not relevant to the pending criminal case. (*Id.*, Ex. 1). On March 20, 2006, the trial court granted the State's motion to quash in part and ordered the University of Cincinnati to submit the requested documents under seal for *in camera* inspection; the order further provided: "The defendant will be provided access to said documents should the Court determine that there exists an inconsistency in Mr. Reubusch's trial testimony regarding his academic credentials." (*Id.*, Ex. 3).

Thereafter, on April 14, 2006, petitioner waived his right to a trial by jury and entered a plea of no contest to an amended reduced charge in Count 4 of attempted tampering with evidence and to the attempted importuning offense charged in Count 5; in exchange for his plea, the State agreed to the dismissal of the remaining three counts. (*Id.*, Ex. 4; *see also* Doc. 12, Ex. 2, Tr. 56). Petitioner's plea of no contest was accepted by the court, and on April 15, 2006, the court found petitioner to be a "sexually oriented offender" and sentenced him to a three (3) year period of

_____

[1]Ohio Rev. Code § 2907.07(E) has since been renumbered § 2907.07(D).

community control for each offense. (Doc. 14, Ex. 4).

With the assistance of his trial counsel, petitioner timely appealed to the Ohio Court of Appeals, First Appellate District, raising two assignments of error challenging the denial of his motion to suppress and his motion to dismiss Count 5 of the indictment. (*See id.,* Exs. 6, 8).

On April 27, 2007, the Ohio Court of Appeals overruled petitioner's assignments of error and affirmed the trial court's judgment. (Doc. 15, Ex. 2). In its Opinion, the court made the following factual findings, which are presumed correct under 28 U.S.C. § 2254(e)(1),[2] regarding the "Factual Background" leading to petitioner's indictment and convictions for attempted tampering with evidence and attempted importuning upon entry of the no contest plea:

> On November 16, 2004, Hamilton County Sheriff's Detective Rick Sweeney received a telephone call from Cincinnati Enquirer reporter Sharon Coolidge. Coolidge directed Sweeney to a website operated by the organization "Perverted Justice." Perverted Justice is a foundation "that is dedicated to exposing adults who use the Internet to seek sexual activity with children." The foundation recruits and trains adult volunteers to pose as children in Internet chatrooms. The volunteers wait for adults to contact them and engage them in sexually oriented conversations. Perverted Justice often posts transcripts of the volunteers' conversations with Internet predators on its website.
>
> Coolidge informed Detective Sweeney that Perverted Justice's website featured a sexually explicit conversation between a Cincinnati attorney and a Perverted Justice volunteer posing as a 13-year-old girl. The Cincinnati attorney, whom Sweeney was later able to identify as Andrews, communicated under the screen name "manofdarkneedsl951." The Perverted Justice volunteer operated under the screen name

---

[2]28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct" unless petitioner rebuts the presumption by "clear and convincing evidence." In this case, because petitioner has neither argued nor presented evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, such findings are presumed to be correct.

"rachel_west90." Sweeney viewed the conversations that Coolidge had identified. The following are excerpts from a conversation between "manofdarkneedsl951" and "rachel_west90" posted on Perverted Justice's website.

Rachel_west90: where do you live?

Manofdarkneedsl951: ohio***

Rachel_west90: Im 13 is that ok?

Manofdarkneedsl951: yes

Manofdarkneedsl951: you like to see men jack off?

Rachel_west90: really?

Manofdarkneedsl951: yes***

Manofdarkneedsl951: you masterbate

Rachel_West90: yea***

Manofdarkneedsl951: you have pics?

Rachel_west90: I have 2

Manofdarkneedsl951: send?

Rachel_west90: ok***

Rachel_west90: can you turn on a light

Rachel_west90: I can hardly see

Rachel_west90: wow***

Manofdarkneedsl951: you want to meet an older man?

Rachel_west90: maybe***

Rachel_west90: whats your e mail

Manofdarkneedsl951: robnaq@yahoo.com

Rachel_west90: ok hold on I'll e mail it [her picture]***

Manofdarkneedsl951: which are you? [referring to the picture]

Rachel_west90: Im on the right.  I used to live in Texas.

Manofdarkneedsl951: I like

Rachel_west90: ty

Manofdarkneedsl951: are you a virgin?

Rachel_west90: yea

Manofdarkneedsl951: you want to change that?

Rachel_west90: maybe

Rachel_west90: will you be gentls?

Manofdarkneedsl951: have you done anything sexually?

Manofdarkneedsl951: yes

Rachel_west90: just kissed***

Rachel_west90: whats your name?

Manofdarkneedsl951: rob***

Manofdarkneedsl951: you close to cumming

Rachel_west90: no, I've just been watching u

Rachel_west90: are u?

Manofdarkneedsl951: I can wait for you

Manofdarkneedsl951: you have any pubic hair?

Rachel_west90: wanna talk on the phone for a min?

Rachel_west90: just a little

Manofdarkneedsl951: number?

Rachel_west90: Id have to call u. My mom has caller ID

Manofdarkneedsl951: 513-378-6608

And the following are excerpts from a subsequent conversation between manofdarkneedsl951 and rachel_west90.

Manofdarkneedsl951: you want to see me cum?***

Manofdarkneedsl951: are you nude?

Rachel_west90: no***

Rachel_west90: why do u like younger gurls

Manofdarkneedsl951: nice and tight***

Manofdarkneedsl951: want to suck me?

Rachel_west90: i never done that

Manofdarkneedsl951: want to?***

Manofdarkneedsl951: have you seen a man cum?***

Manofdarkneedsl951: i want to f\*\*k you to

Rachel_west90: will u come out here to where I am?\*\*\*

Manofdarkneedsl951: will you do all if i do

Rachel_west90: will u use a condom?\*\*\*

Manofdarkneedsl951: yes

Manofdarkneedsl951: i came

After viewing these conversations, Detective Sweeney verified that Andrews was, in fact, manofdarkneedsl951.... Sweeney obtained and executed two search warrants during his investigation, and Andrews was arrested and indicted....

(*Id.,* pp. 2-5) (footnotes omitted).

With the assistance of his counsel, petitioner timely appealed the Ohio Court of Appeals' decision to the Ohio Supreme Court. (*Id.,* Exs. 3-4). In his memorandum in support of jurisdiction, petitioner asserted two propositions of law:

1. Attempted Importuning is Not a Crime.

2. A charge of Attempted Importuning Is Unconstitutional Because it Criminalizes Speech That Is Presumptively Protected by the First Amendment.

(*Id.,* Ex. 4).

On September 26, 2007, the Ohio Supreme Court declined jurisdiction to hear the case and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 6).

Petitioner next commenced the instant habeas corpus action. In the petition, which was filed in September 2008, petitioner alleges two grounds for relief:

**Ground One:** See ... Motion to Dismiss Count Five Of The Indictment; Brief of Petitioner before the First District Court of Appeals; and Memorandum in Support of Jurisdiction Before the Supreme Court of Ohio. A charge of attempted importuning is unconstitutional because it criminalizes [speech that is] presumptively protected by the First Amendment of the United States Constitution. The petitioner is alleged to have had a sexual conversation via the internet with a person, who was neither underage nor a law enforcement officer. The person who talked to the petitioner did so without law enforcement's involvement until after the conclusion of the conversation.

**Ground Two:** See Memorandum In Opposition To State's Motion To Quash Subpoena Duces Tecum. Petitioner upon information and belief is of the opinion that the State has violated it[]s duty to provide evidence favorable to the defendant....

(Doc. 1, pp. 66, 78).[3]

## OPINION

### A. Petitioner Is Not Entitled To Relief Based On His Claim In Ground One Attacking The Constitutionality Of The Attempted Importuning Charge

In Ground One of the petition, petitioner refers to the motion he filed in state court to dismiss Count Five of the indictment, as well as the pleadings he filed on appeal from the denial of his motion to dismiss. He specifically contends that he is entitled to relief from his conviction on the attempted importuning charge set forth in Count Five because "the thoughts and ideas allegedly conveyed by [him] in the online chat [with an adult, who was not a law enforcement officer,] are fully protected

---

[3]The 108-page petition filed with the Court is difficult to follow, because it consists of out-of-sequence pages from the form petition for 28 U.S.C. § 2254 actions inter-mixed with assorted out-of-order pages from various documents and pleadings filed in the underlying state court proceedings. Petitioner's first ground for relief is stated on page 78 of the petition, which follows his second ground for relief found on page 66; it also appears that petitioner has inserted pages from the state-court pleadings and other documents relating to his claims in front of the pertinent ground for relief. (*See* Doc. 1).

by the First Amendment and therefore cannot be subject to criminal prosecution." (Doc. 1, pp. 5, 78).[4] The claim, which was raised by petitioner on appeal to both the Ohio Court of Appeals and Ohio Supreme Court, is subject to review on the merits.

Ohio's importuning statute now codified at Ohio Rev. Code § 2707.07(D) provides in pertinent part:

> No person shall solicit another by means of a telecommunications device ... to engage in sexual activity with the offender when the offender is eighteen years of age or older and *either* of the following applies:

> (1) The other person is thirteen years or older but less than sixteen years of age, the offender knows that the other person is thirteen years of age or older but less than sixteen years of age or is reckless in that regard, and the offender is four or more years older than the other person.

---

[4]In the state court proceedings, petitioner also argued that attempted importuning is not a criminal offense because importuning itself "is already an attempt crime." (Doc. 13, Ex. 6; *see also* Doc. 14, Ex. 8, pp. 3-5; Doc. 15, Ex. 4, pp. 3-5). The Ohio Court of Appeals, as the last state court to issue a reasoned decision rejecting this claim, held that importuning as defined in Ohio Rev. Code § 2907.07 is not an attempt offense and that, therefore, "the offense of attempted importuning does not amount to an attempt of an attempt and ... is a cognizable crime;" the court reasoned that the "word 'attempt' appears nowhere in the language of the statute," and that "[a]lthough importuning requires the soliciting of sexual activity," it "does not involve an attempt to engage in the sexual activity that has been solicited. Rather, for the offense of importuning, 'the harm is in the asking.'" (Doc. 15, Ex. 2, p. 8). It appears that petitioner has abandoned this claim on federal habeas review. Even assuming that petitioner has raised the claim herein, this Court is bound by the state court's interpretation of state law that was "announced on direct appeal of the challenged conviction," *see Bradshaw v. Richey,* 546 U.S. 74, 76 (2005) (citing *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991), and *Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975)); in any event, the Court is precluded from addressing the claim, which was argued to and decided by the Ohio courts as an issue of state law only, *see* 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *cf. Cole v. Zavaris,* No. 07-cv-01197-WDM-MJW, 2009 WL 1600556, at *2, 6-8 (D. Colo. June 4, 2009) (unpublished) (holding that the petitioner procedurally defaulted a claim that he "was improperly convicted of an attempt to attempt a crime of enticement," because the claim was raised to and considered by the state courts solely as an issue of state law), *certificate of appealability denied,* 349 Fed.Appx. 328 (10th Cir. Oct. 16, 2009) (not published in Federal Reporter). (*See* Doc. 13, Ex. 6, pp. 3-6; Doc. 14, Ex. 8, pp. 3-5; Doc. 15, Ex. 4, pp. 3-5; *see also* Doc. 15, Ex. 2, pp. 6-9).

(2) The other person is a law enforcement officer posing as a person who is thirteen years of age or older but less than sixteen years of age, the offender believes that the other person is thirteen years of age or older but less than sixteen years of age or is reckless in that regard, and the offender is four or more years older than the age the law enforcement officer assumes in posing as the person who is thirteen years of age or older but less than sixteen years of age.

(Emphasis added).

As the Ohio Court of Appeals pointed out in its direct appeal decision, petitioner was charged with attempting to commit the crime of importuning because he "solicited sexual activity from a civilian adult posing as a 13-year-old on behalf of the Perverted Justice Organization," which is "not directly proscribed by R.C. 2907.07(D)." (*See* Doc. 15, Ex. 2, p. 9). The court stated: "The fact that Andrews solicited a civilian adult, rather than a person identified in the statute, is the only factor that made his actions an attempted criminal act, as opposed to a completed act." (*Id.*).

It is petitioner's position that the attempted importuning charge, based on conduct not directly proscribed by Ohio Rev. Code § 2707.07(D), violated his First Amendment right to free speech under the Supreme Court's decision in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002). The Ohio Court of Appeals, which was the last state court to issue a reasoned decision addressing this claim, found no merit to petitioner's argument. The court reasoned:

Relying on the United States Supreme Court's decision in *Ashcroft*, ... Andrews argues that his online communication was entitled to unfettered First Amendment protection because it did not involve an actual minor. We disagree.

This court has already addressed whether the offense of importuning under R.C. 2907.07 infringes upon the right of free speech guaranteed by the First Amendment in the case of *State v. Tarbay*, [810 N.E.2d 979 (Ohio Ct. App. 1 Dist. 2004)]. Like Andrews, Tarbay had communicated online with a person whom he had believed to be a 13-year-old girl. But Tarbay had actually been communicating with a Hamilton County deputy sheriff. Among other offenses, Tarbay was

convicted of five counts of importuning.

When evaluating Tarbay's claim that the offense of importuning infringed upon his right to free speech, we recognized that the First Amendment does protect discussion about and soliciting sexual activity between two adults. But we also noted that the state had a compelling interest in protecting minors from unlawful sexual contact, and that the offense of importuning "[was] aimed not at preventing the expression of ideas, but at 'prohibiting adults from taking advantage of minors and the anonymity and ease of communicating through telecommunications devices, especially the Internet and instant messaging devices, by soliciting minors to engage in sexual activity.'" With these concerns in mind, we concluded that "there is simply 'no First Amendment right to persuade minors to engage in illegal sex acts.'"

The *Tarbay* court clearly and correctly determined that Ohio's importuning statute does not infringe upon the First Amendment's right to freedom of speech. Consequently, Andrews' argument is without merit.

(Doc. 15, Ex. 2, pp. 13-14) (footnote citations omitted).

In this federal habeas case, the applicable standard of review governing the adjudication of petitioner's constitutional claim, which was decided on the merits by the Ohio courts, is set forth in 28 U.S.C. § 2254(d). Pursuant to this standard, petitioner is not entitled to relief unless the state court's adjudication of his claims resulted in a decision that (1) is contrary to, or involves an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998).

A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case

differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942. A legal principle is "clearly established" for purposes of habeas corpus review "only when it is embodied in a holding of [the Supreme] Court." *Thaler v. Haynes,* 130 S. Ct. 1171, 1173 (2010).

An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.). Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also Bell v. Cone,* 535 U.S. 685, 694 (2002); *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942.

The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

Here, the Ohio Court of Appeals did not cite clearly established federal law as determined by the United States Supreme Court in rejecting petitioner's First Amendment claim, but instead relied on its prior decision in *Tarbay* as controlling precedent. In *Tarbay,* the defendant's on-line conversations with a law enforcement officer whom he believed was a 13-year-old girl resulted in his indictment for importuning under the provision now codified at Ohio Rev. Code § 2707.07(D)(2). The defendant entered a no contest plea, and contended on appeal that § 2907.07(D)(2) is unconstitutional on its face and as applied to him "because there is no real minor involved to protect from harm." *Tarbay,* 810 N.E.2d at 981-82.

As the *Tarbay* court recognized in addressing the claim of constitutional error, a statute may be deemed overbroad on its face if it "sweeps within its prohibitions what may not be punished under the First ... Amendment." *Grayned v. City of Rockford,* 408 U.S. 104, 114-15 (1972); *see also Tarbay,* 810 N.E.2d at 981. However, by the same token, as the *Tarbay* court also understood, speech protected by the First Amendment may be regulated by the State if the regulation is narrowly tailored to promote a compelling state interest. *See United States v. Playboy Entertainment Group, Inc.,* 529 U.S. 803, 813 (2000); *Broadrick v. Oklahoma,* 413 U.S. 601, 611-12 (1973); *see also Tarbay,* 810 N.E.2d at 981.

In *Broadrick,* 413 U.S. at 613, the Supreme Court emphasized that overbreadth claims "have been curtailed when invoked against ordinary criminal laws that are sought to be applied to protected conduct." The Court stated:

> [A]t the very least, ... facial overbreadth adjudication is an exception to our traditional rules of practice and ... its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from "pure speech" toward conduct and that conduct–even if expressive–falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect–at best a prediction–cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe.

*Id.* at 615.

While acknowledging that the "First Amendment does protect two adults communicating about and soliciting sexual activity," the Ohio Court of Appeals in both *Tarbay* and the instant case correctly pointed out that "the United States Supreme Court has recognized that there is a compelling interest in protecting the physical and psychological well-being of minors." *Tarbay,* 810 N.E.2d at 981-82 (citing *Sable Communications of California, Inc. v. FCC,* 492 U.S. 115, 126 (1989), in a footnote). In *New York v. Ferber,* 458 U.S. 747, 757 (1982), the Supreme Court explicitly emphasized that states have a compelling interest of "surpassing

13

importance" in preventing the sexual exploitation and abuse of children.[5] *See also Osborne v. Ohio,* 495 U.S. 103, 108-11 (1990) (holding that "Ohio may constitutionally proscribe the possession and viewing of child pornography" in light of the "gravity" and "importance of the State's interest in protecting the [child] victims"); *cf. Ashcroft,* 535 U.S. at 244-45, 249-50 (recognizing that the "sexual abuse of a child is a most serious crime and an act repugnant to the moral instincts of a decent people," which may be proscribed by the government).

Given this compelling governmental interest, no argument can be made that legislation prohibiting the solicitation of sexual activity from a minor infringes on First Amendment rights. *Cf. United States v. Bailey,* 228 F.3d 637, 639 (6th Cir. 2000), *cert. denied,* 532 U.S. 1009 (2001). Citing *Ashcroft,* the defendant in *Tarbay* challenged the constitutionality of the particular provision set forth in Ohio Rev. Code § 2707.07(D)(2), because it criminalizes conduct that does not involve an actual minor.

In *Ashcroft,* the Supreme Court struck down as overbroad two statutory provisions that expanded the federal prohibition on child pornography to include "a range of sexually explicit images, sometimes called 'virtual child pornography,' that appear to depict minors but were produced by means other than using real children, such as through the use of youthful-looking adults or computer-imaging technology." *See Ashcroft,* 535 U.S. at 234, 250-58; *see also United States v. Williams,* 553 U.S. 285, 289 (2008). In so ruling, the Court reasoned that unlike the child pornography materials in *Ferber* and *Osborne,* "virtual child pornography" is entitled to First Amendment protection because it does not involve the exploitation or abuse of "real children" and thus does not directly implicate the "child-protection rationale for speech restriction." *See Ashcroft,* 553 U.S. at 249-51. The Court pointed out, however, in rejecting the government's argument that the provisions were "necessary

---

[5]In *Ferber,* the Supreme Court held that child pornography is not entitled to First Amendment protection as long as the conduct to be prohibited is "adequately defined by the applicable state law, as written or authoritatively construed." *Ferber,* 458 U.S. at 756-58, 764. The Court further ruled that, because of the compelling governmental interest involved in protecting minors from sexual exploitation and abuse, the First Amendment does not require that the proscribed child pornography meet the standard of "obscenity" enunciated in *Miller v. California,* 413 U.S.15 (1973)–i.e., that the "works ..., taken as a whole, appeal to the prurient interest in sex, ... portray sexual conduct in a patently offensive way, and ... taken as a whole, do not have serious literary, artistic, political, or scientific value." *Id.* at 755, 760-61.

14

because pedophiles may use virtual child pornography to seduce children," that "[t]he Government of course may punish adults who provide unsuitable materials to children, ... and it may enforce criminal penalties for unlawful solicitation." *Id.* at 251-52.

The *Tarbay* court held that the *Ashcroft* decision, which pertained to governmental restrictions on the production and possession of child pornography, was inapposite and that Ohio Rev. Code § 2907.07(D)(2) is constitutional both on its face and as applied. *Tarbay,* 810 N.E.2d at 983. The court reasoned that the provisions challenged in *Ashcroft* were aimed at the "dissemination of *protected* speech, i.e., the expression of ideas," whereas Ohio's importuning statute regulates conduct to the extent it is aimed at "prohibiting adults from taking advantage of minors and the anonymity and ease of communicating through telecommunications devices ... by soliciting minors to engage in sexual activity." *Id.* (emphasis in original). Moreover, in contrast to *Ashcroft,* which involved only an "attenuated potential ... that a hypothetical pedophile might use [virtual child pornography] ... to improve his chances of engaging in sexual activity with a child," the "immediate potential for a person to use the anonymity of the Internet ... to directly solicit a minor to engage in illegal sexual activity is very significant." *Id.* Finally, the court rejected the argument that § 2907.07(D)(2) "punishes mere thought," reasoning in pertinent part as follows:

> ....[T]he importuning statute does not prohibit an adult and child from communicating about sex, nor does it prevent two people, regardless of their age, from talking about sexual activity between a child and an adult. R.C. 2907.07([D])(2) criminalizes only the solicitation of a minor, or someone the offender believes to be a minor, to engage in illegal sexual activity with an adult. Tarbay was not convicted of importuning because he was thinking about having sex with a minor; he was convicted for his intent to solicit a person he believed to be a minor to engage in sex acts with him. "[T]he harm is in the asking," not the discussion of it....

*Id.* at 984 (footnote citation omitted).

The same claim challenging the constitutionality of Ohio Rev. Code § 2907.07(D)(2) on First Amendment grounds was previously raised and rejected by the Court in a federal habeas action filed in this District. *See Alley v. Leis,* No. 1:05cv151, 2007 WL 1795299 (S.D. Ohio June 19, 2007) (Beckwith, C.J.; Black,

M.J.) (unpublished). In the Report and Recommendation adopted by the Court, the magistrate judge extensively discussed the *Tarbay* decision, which, as in the instant case, had been relied on by the First District appellate court in affirming the petitioner's importuning conviction on direct appeal. The magistrate judge determined that the petitioner had "failed to show that the Ohio Court of Appeals' decision is either contrary to or an unreasonable application of First Amendment jurisprudence as determined by the United States Supreme Court." *See id.* at \*8-10. In so concluding, the magistrate judge reasoned in pertinent part:

> Since Ohio Rev. Code § 2907.07([D])(2) criminalizes only conduct, *i.e.,* attempting to solicit children to engage in sexual activity, and not the expression of ideas, the importuning statute does not regulate free speech, does not prohibit constitutionally protected conduct, and is not overbroad.... Moreover, the State has a compelling interest in protecting children and experience teaches that "it is almost impossible otherwise to catch those who would prey sexually upon children" without the techniques employed by the importuning statute. *Tarbay,* ... 810 N.E.2d at 986 (Painter, J., concurring). The statute is narrowly tailored to achieve that interest and does not have a chilling effect on free speech since the offender must believe he is soliciting a minor for sexual activity, a criminal act, before his conduct may be regulated. There is simply no First Amendment right to persuade minors to engage in illegal sex acts.... Because the importuning statute regulates only conduct, and not speech, *Tarbay,* ... 810 N.E.2d at 984 ..., the First District Court of Appeals' decision was not contrary to or an unreasonable application of federal law.
>
> Nor does the fact that the petitioner "never traveled to meet the fictitious teenager or otherwise acted upon the sexual discussions" ... persuade this Court that the state court's rejection of petitioner's First Amendment claim was unreasonable. The harm targeted by the importuning statute is the *solicitation* of children for illegal sexual activity, *i.e.,* the "asking," not an action in furtherance of the actual consummation of sexual activity. Moreover, the statute is not aimed at suppressing the "private thoughts" of an adult, but rather only speech that solicits minors to engage in illegal sexual activity with adults. Speech is merely the vehicle through which the adult attempts to induce his minor victim to engage in illegal activity. Thus, the state appellate

16

court's rejection of petitioner's First Amendment challenge was not contrary to, or an unreasonable application of the Supreme Court's decision in *Ashcroft*....

*Id.* at \*10-11 (emphasis in original) (footnote omitted).

In adopting the magistrate judge's Report and Recommendation to deny habeas relief in *Alley*, the District Court emphasized that the "basic proposition [that there is no First Amendment right to solicit sexual activity from a minor] does not change just because a person solicits sexual activity from an adult police officer whom he erroneously believes is a minor." *Id.* at \*3. The Court pointed out that the federal courts have unanimously determined that an analogous federal solicitation statute "does not violate the First Amendment where no actual minor is involved because the statute only criminalizes conduct, i.e., the inducement of minors to engage in sexual activity." *Id.* (and cases cited therein).[6] The Court stated further that in this context, the "safeguard against chilling protected speech between adults is that the prosecution must prove that the offender actually believed he was soliciting or inducing a minor." *Id.* (citing *United States v. Meek,* 366 F.3d 705, 721 (9th Cir. 2004)). The Court continued:

....[A]s in the case with [the analogous federal statute], § 2907.07(D)(2) contains a scienter element which eliminates the danger that protected speech between adults will be chilled. The offender must believe that the target of the inducement is at least 13 years of age, but less than 16 years of age, or be reckless in that regard....

*Id.* at \*4.

---

[6]Indeed, in one of the cases cited by the District *Court–United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004), *cert. denied,* 545 U.S. 1134 (2005)–the Eleventh Circuit went so far as to suggest that the First Amendment argument is "frivolous;" specifically, the court stated: "We need not pause for long on account of Hornaday's frivolous argument that applying [the federal solicitation statute] to him is unconstitutional because it punishes him for engaging in speech activities protected by the First Amendment. Speech attempting to arrange the sexual abuse of children is no more constitutionally protected than speech attempting to arrange any other type of crime."

17

The District Court further ruled that *Ashcroft* did not control the disposition of the case, stating that the "only similarity between Petitioner's case and *Ashcroft* is the absence of an actual minor in the offense." *Id.* at \*4. The Court explained that in contrast to the statute in *Ashcroft,* which proscribed speech that "was not obscene, did not constitute child pornography, and would even apply to works with socially redeeming value," Ohio Rev. Code § 2907.07(D)(2) "does not reach constitutionally protected speech" as "there is no constitutional right to solicit minors to engage in illegal sexual activity;" instead, as the magistrate judge had observed, the "speech" involved in an importuning offense is "merely the vehicle through which the illegal solicitation occur[s]." *Id.*

In *Helle v. Collins,* No. 3:06cv150, 2007 WL 3125139, at \*3 (N.D. Ohio Oct. 24, 2007) (unpublished), a federal court in the Northern District of Ohio faced with the same issue posed in *Alley* similarly concluded that the state appellate court's decision upholding the constitutionality of Ohio Rev. Code § 2907.07(D)(2) was neither contrary to nor involved an unreasonable application of clearly established Supreme Court precedents.[7] The *Helle* Court pointed out that in *Ashcroft,* which had been cited by petitioner "for the proposition that criminalizing communications where no children are involved is an impermissible restriction under the First Amendment," the Supreme Court "expressly distinguished unlawful solicitation from its holding." *Id.* at \*2 (quoting *Ashcroft,* 535 U.S. at 251-52).

The Court rejected the petitioner's argument that the statute is not narrowly tailored to meet a compelling state interest because it punishes conduct that does not involve an actual child. As in *Alley,* the Court reasoned:

> [Ohio Rev. Code § 2907.07(D)(2)] "requires a person to believe he is soliciting a minor for sexual activity. If the person so believes that he is soliciting a minor, he intends to violate the statute and his speech is not protected." The State's compelling interest in protecting children from sexual exploitation by adults is furthered by Section ([D])(2). Section ([D])(2) punishes the intent to solicit a minor coupled with the act of attempting to contact a minor for illegal purposes. The fact that

---

[7] *See also Snyder v. Allen County Court of Common Pleas*, No. 3:04cv7667, 2006 WL 414070 (N.D. Ohio Feb. 21, 2006) (unpublished) (adopting a Report and Recommendation to deny habeas relief in a case where the petitioner challenged the constitutionality of Ohio Rev. Code § 2907.07(D)(2)).

an officer intercepts the intended unlawful communication, preventing the harmful solicitation from reaching an actual child, clearly furthers the stated purposes of the statute by protecting minors from the unlawful solicitation.

*Id.* at *3.

Finally, the Court rejected the petitioner's additional arguments that the statute proscribed protected speech between two adults and punished "mere thought or belief," reasoning in pertinent part as follows:

....Petitioner's speech was not "pure" speech, rather, it was intended to lure children into sexual activities with adults. Petitioner intended to solicit a minor. That he actually and unknowingly was communicating with an adult officer does not make the conduct plus speech protected "pure" speech....

....[Moreover, as] the Magistrate Judge, quoting *State v. Snyder,* [801 N.E.2d 876 (Ohio Ct. App. 3 Dist. 2003), *appeal dismissed,* 807 N.E.2d 367 (Ohio 2004),] stated[,] "R.C. 2907.07([D])(2) is not aimed at the expression of ideas or belief; rather, it is aimed at prohibiting adults from taking advantage of minors...." This Court agrees with the sound reasoning of the appellate court. What O.R.C. § 2907.07([D])(2) prohibits is not the free exchange of ideas or the mere expression of beliefs but conduct expressly intended to lure young children into sexual activities with adults. Clearly, Petitioner intended to exchange more than just ideas and beliefs with the minor with whom he thought he was communicating.

*Id.* at *4-5.

In this case, unlike *Tarbay, Alley* and *Helle*, petitioner does not contend that the importuning statute is overbroad on its face or as applied to him. Instead, it appears that petitioner is arguing that he could not be charged with attempted importuning because he had a First Amendment right to engage in the transcribed on-line conversations with an adult civilian volunteer for Perverted Justice, who was neither a minor nor a law enforcement officer.

However, the fact that petitioner was charged with attempted importuning, rather than importuning, does not change the Court's analysis of the First Amendment issue. A First Amendment right did not arise in this case simply because the charged conduct was not directly proscribed by Ohio Rev. Code § 2907.07(D) (1) or (2). As the case-law discussed above makes clear, there is "no constitutional right to solicit minors to engage in illegal sexual activity." *Bailey,* 228 F.3d at 639; *see also United States v. Hornaday,* 392 F.3d 1306, 1311 (11th Cir. 2004) ("Speech attempting to arrange the sexual abuse of children is no more constitutionally protected than speech attempting to arrange any other type of crime."), *cert. denied,* 545 U.S. 1134 (2005); *Alley, supra,* 2007 WL 1795299, at *3. It makes no difference that petitioner solicited a person who in actuality was neither a minor nor a law enforcement officer. As the District Court emphasized in *Alley, supra,* 2007 WL 1795299, at *3, the "basic proposition [that there is no First Amendment right to solicit sexual activity from a minor] does not change just because a person solicits sexual activity from an adult police officer whom he erroneously believes is a minor." This same reasoning extends to *any* adult whom the offender erroneously believes is a minor.

In this case, petitioner was not punished for the expression of his beliefs or ideas, but for his *conduct* when "[b]elieving he was engaging in a conversation with a minor," he "then act[ed] on that belief in soliciting, what he believed to be, a minor for purposes of engaging in sexual activity." *Helle, supra,* 2007 WL 3125139, at *3; *see also Alley, supra,* 2007 WL 1795299, at *4. As the Ohio Court of Appeals noted in its decision on direct appeal, the "fact that [petitioner] solicited a civilian adult, rather than a person identified in the statute, is the only factor that made his actions an attempted criminal act, as opposed to a completed act" under Ohio Rev. Code § 2907.07(D). (*See* Doc. 15, Ex. 2, p. 9). Here, as in *Alley* and *Helle,* petitioner was punished for his intention to solicit a minor that was coupled with conduct acting on his intention. As in those cases, petitioner's "speech" was "merely the vehicle through which the [attempted] illegal solicitation occurred." *Alley, supra,* 2007 WL 1795299, at *4.

Accordingly, the undersigned is persuaded by the courts' reasoning in *Alley* and *Helle* that the attempted importuning charge lodged against petitioner did not violate his First Amendment right to free speech. The state court's adjudication of petitioner's First Amendment claim was neither contrary to nor involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Cf. Cole v. Zavaris,* No. 07-cv-01197-WDM-MJW, 2009 WL 1600556, at *15-16 (D. Colo. June 4, 2009) (unpublished) (holding that the petitioner

20

had "not shown that his conviction for attempted enticement of a child is contrary to or an unreasonable application of federal law, as set forth by the Supreme Court in *Ashcroft*"), *certificate of appealability denied,* 349 Fed.Appx. 328 (10th Cir. Oct. 16, 2009) (not published in Federal Reporter). Therefore, petitioner is not entitled to federal habeas relief based on the constitutional claim alleged in Ground One of the petition.

## B. Petitioner Is Not Entitled To Relief Based On The *Brady* Claim Alleged In Ground Two, Which Is Waived And, In Any Event, Lacks Merit

In Ground Two of the petition, petitioner refers to a pleading he filed with the trial court prior to entering the no contest plea, wherein he registered his opposition to the State's motion to quash the subpoena duces tecum he had served on the University of Cincinnati Office of the Registrar for the academic records of potential State witness John Patrick Reubusch. (Doc. 1, p. 66). Petitioner conclusorily claims that the State violated its duty to provide him with evidence favorable to the defense in violation of *Brady v. Maryland,* 373 U.S. 83, 87 (1963). (*Id.*). He does not allege any facts in support of this claim, but it appears from documents inserted as part of the petition that petitioner is arguing that the State's motion to quash amounted to a refusal to disclose evidence casting doubt on Reubusch's qualifications to testify for the State as an expert witness; specifically, petitioner contended in his memorandum in opposition to the State's motion to quash that the subpoenaed records would have shown that Reubusch misstated his educational background in his job application with the Hamilton County Sheriff's Office. (*See id.,* pp. 3-4).

Respondent argues in the return of writ that petitioner waived any claim of error stemming from the State's motion to quash when he entered his no contest plea. (Doc. 8, p. 8). This argument has merit.

A guilty or no-contest plea involves a waiver of many substantial constitutional rights, including the right to a trial by jury where the State has the burden of proving the defendant's guilt beyond a reasonable doubt, the right to confront adverse witnesses, and the right to present evidence in one's defense. *Fautenberry v. Mitchell,* 515 F.3d 614, 636 (6th Cir.) (citing *Boykin v. Alabama,* 395 U.S. 238, 243 (1969)), *cert. denied,* 129 S.Ct. 412 (2008). The undersigned has reviewed the transcript of petitioner's plea hearing held on April 14, 2006, which plainly reveals that petitioner knowingly and voluntarily waived all these rights when he entered his

plea of no contest. (*See* Doc. 12, Tr. 70-71, 73-74). At that time, petitioner was well aware of the facts now apparently serving as the basis for his claim of a *Brady* violation. However, by forfeiting his right to a jury trial, as well as his rights to confront adverse witnesses and to present evidence in his defense, petitioner also waived the right to challenge his conviction based on the claim of constitutional error that arose from his dispute with the State over a trial-related evidentiary matter.

Even assuming, *arguendo*, that the issue was preserved for appeal purposes after petitioner entered the no contest plea, the claim nevertheless is still barred from review in this federal habeas proceeding because petitioner failed to raise the *Brady* claim to the Ohio Court of Appeals or Ohio Supreme Court for their consideration on direct appeal. (*See* Doc. 14, Ex. 8; Doc. 15, Ex. 4).

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985).

If, because of a procedural default, the petitioner has not had a claim considered by the state's highest court and he can no longer present the claim to the state courts, he has waived such claim for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error, or that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, petitioner committed a procedural default by failing to raise the *Brady* claim on direct appeal, thereby depriving the state's highest court of the opportunity to address the claim. Petitioner has not provided any justification as "cause" for his procedural default. He also has not shown that failure to consider the

defaulted claim will result in a "fundamental miscarriage of justice," or in other words, that the alleged error "probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995). Therefore, the claim is waived.

In any event, even assuming the claim alleged in Ground Two is subject to review in this proceeding, petitioner has not demonstrated that a *Brady* violation occurred in this case.

The Due Process Clause of the Fourteenth Amendment requires the prosecution to disclose evidence in its possession that is both favorable to the accused and material to guilt or punishment. *Brady,* 373 U.S. at 87; *see also Pennsylvania v. Ritchie,* 480 U.S. 39, 57 (1987) (plurality opinion); *United States v. Bagley,* 473 U.S. 667, 674 (1985). A "defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the [State's] files." *Ritchie,* 480 U.S. at 59; *see also Weatherford v. Bursey,* 429 U.S. 545, 559 (1977). The purpose of *Brady* is not to displace the adversary system as the primary means to uncover the truth, but rather to ensure that a miscarriage of justice does not occur. *Bagley,* 473 U.S. at 675. Therefore, the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial. *Id.*

The defendant is deprived of a fair trial "only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." *Id.* at 678. Evidence is material if there is a reasonable probability that the result of the trial would have been different had the evidence been disclosed to the defense. *Ritchie,* 480 U.S. at 57.

Impeachment evidence, as well as exculpatory evidence, falls within the *Brady* rule. *Bagley,* 473 U.S. at 676. Impeachment evidence is considered "evidence favorable to the accused" because the jury's assessment of the reliability and truthfulness of a given witness may well be determinative of the defendant's guilt or innocence. *Id.; see also Giglio v. United States,* 405 U.S. 150, 153 (1972).

In this case, petitioner apparently contends that Reubusch's academic records from the University of Cincinnati contain information falling with the *Brady* rule to the extent they might have served to impeach Reubusch's credibility or qualifications if a trial had been held and Reubusch had been called to testify for the State as an

23

expert witness. The State opposed petitioner's pretrial attempt to obtain access to those records, arguing in the motion to quash that "opening said information to public record violates Mr. R[eu]busch's rights to privacy" and that the "defendant would, in no way, be prejudiced by being prevented from obtaining Mr. R[eu]busch's personal and private information," which had "no relevance to the issues currently pending before this court." (Doc. 14, Ex. 1). The State further contended in the alternative that the trial court should conduct an *in camera* inspection of the subpoenaed documents "to determine if they should be released and then make appropriate orders to prevent disclosure of personal and private information of Mr[.] R[eu]busch[] to the general public." (*Id.*). The trial court apparently was persuaded by the State's alternative argument and ordered the University of Cincinnati to submit the subpoenaed documents under seal to the court for *in camera* inspection; in the March 2006 order granting the State's motion to quash in part, the court also ruled that the petitioner would "be provided access to said documents" if determined that "there exists an inconsistency in Mr. Reubusch's trial testimony regarding his academic credentials." (*Id.*, Ex. 3).

In *Ritchie,* which is analogous to the case-at-bar to the extent petitioner claimed that he was denied due process because he was not allowed access to a state agency's confidential investigatory records, the Supreme Court recognized that disclosure of otherwise privileged records may be required in certain circumstances based on a "plausible showing" by defendant that they contain relevant information both material and favorable to the defense. *Ritchie,* 480 U.S. at 60. The Court held, however, that the interest of ensuring a fair trial would be fully protected by requiring the files to be "submitted only to the trial court for *in camera* review." *Id.* at 60. The Court reasoned:

> Although this rule denies [defendant] the benefits of an "advocate's eye," we note that the trial court's discretion is not unbounded. If a defendant is aware of specific information contained in the file ..., he is free to request it directly from the court, and argue in favor of its materiality. Moreover, the duty to disclose is ongoing; information that may be deemed immaterial upon original examination may become important as the proceedings progress, and the court would be obligated to release information material to the fairness of the trial.

*Id.*

In his opinion concurring in part and concurring in the judgment, Justice Blackmun disagreed with the plurality to the extent "there might well be a confrontation violation if, as here, a defendant is denied pretrial access to information that would make possible effective cross-examination of a crucial prosecution witness." *Id.* at 61-62. However, Justice Blackmun went on to state: "I am able to concur in the Court's judgment because, in my view, the procedure the Court has set out for the lower court to follow on remand is adequate to address any confrontation problem." *Id.* at 65. In so concluding, he pointed out:

> Under the Court's prescribed procedure, the trial judge is directed to review the ... file for "material" information.... This information would certainly include such evidence as statements of the witness that might be used to impeach her testimony by demonstrating any bias towards [the defendant] or by revealing inconsistencies in her prior statements. When reviewing confidential records in future cases, trial courts should be particularly aware of the possibility that impeachment evidence of a key prosecution witness could well constitute the sort whose unavailability to the defendant would undermine confidence in the outcome of the trial.... [T]he trial court's obligation to review the confidential record for material information is ongoing. Impeachment evidence is precisely the type of information that might be deemed to be material only well into the trial, as, for example, after the key witness has testified.

*Id.* at 65-66.

Here, petitioner has not demonstrated that his constitutional rights were violated by the state trial court's ruling requiring the State to produce the subpoenaed documents to the court for *in camera* inspection. In its order granting the State's motion to quash in part, the court made it clear that petitioner would be provided access to the records if determined at trial that they could serve to impeach Reubusch's trial testimony. As in *Ritchie,* this ruling was adequate to protect petitioner's interest in obtaining a fair trial.

Petitioner has not shown that the undisclosed information was "material" to the defense, creating a reasonable probability that the result of any trial would have been different had such evidence been disclosed to petitioner. Most importantly, petitioner is unable to argue, nor is there evidence in the record even remotely suggesting, that

the trial court's *in camera* review of the subpoenaed materials, for the purpose of determining whether they contained *Brady* material subject to disclosure to the defense, would have been inadequate to ensure the fairness of any trial in which Reubusch would have testified. *Cf. Ritchie,* 480 U.S. at 60, 65-66. The State had a legitimate interest in ensuring that Reubusch's privacy right was protected. In the absence of any evidence indicating that petitioner would have been denied access to the purported *Brady* materials in presenting his defense or confronting adverse witnesses at trial, the undersigned concludes that the claim alleged in Ground Two lacks merit.

Accordingly, in sum, petitioner is not entitled to habeas relief based on the *Brady* claim alleged in Ground Two of the petition, because (1) he waived the claim both when he entered his no contest plea and when he failed to raise it as an issue on appeal in the state courts; and (2) in any event, he has not shown that the trial court's ruling granting in part the State's motion to quash violated his right under *Brady* to receive material evidence favorable to the defense.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claim alleged in Ground Two of the petition, which this Court has concluded is waived and thus procedurally barred from review, because under the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling or whether petitioner has stated a viable constitutional claim in the procedurally-barred ground for relief. A certificate of appealability also should not issue with respect to the constitutional claim alleged in Ground One, which was addressed on the merits herein, because petitioner has failed to make a substantial showing of the denial of a constitutional right in that ground for relief, or that the claim presents issues which are "adequate to deserve encouragement to proceed further."[8] *See Slack,* 529 U.S.

---

[8]Because this Court's adjudication of Ground One does not involve the denial or dismissal of petitioner's claim on procedural grounds, the two-part test enunciated in *Slack,* 529

at 475 (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b); *cf. Cole*, 349 Fed.Appx. 328 (10th Cir. Oct. 16, 2009) (not published in Federal Reporter) (denying certificate of appealability in an analogous case).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 5/3/10

cbc

Timothy S. Hogan
United States Magistrate Judge

C:\Documents and Settings\litkovk\Local Settings\Temp\notesC079F1\08-667denypet.attempted-importun.1stA.waiv-NoContestPlea.wpd

U.S. at 484-85, for determining whether or not to issue a certificate of appealability for procedurally-defaulted claims, is inapplicable.

## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

J. Robert Andrews,
    Petitioner

    vs                          Case No. 1:08cv667
                                  (Barrett, J.; Hogan, M.J.)

Chief Probation Officer, Hamilton County
Court of Common Pleas,
    Respondent

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **within 14 days** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **within 14 days** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).

**SENDER:** *COMPLETE THIS SECTION*

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X ☑ Agent
  ☐ Addressee

B. Received by ( *Printed Name* )   C. Date of Delivery

1. Article Addressed to:

J Robert Andrews
6624 Highland Ave
Cinti, OH 45236

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
   ☑ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*   ☐ Yes

2. Article Number
   *(Transfer from service label)*

7002 3150 0000 8389 8282

PS Form 3811, August 2001        Domestic Return Receipt        102595-02-M-1540

1:08cv667  (Doc.16)